IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:11CV185-RLV

PAULA B. POPE )
        Plaintiff, )
 )
       vs. )    **Memorandum and Order**
 )
BLUE RIDGE ELECTRIC )
MEMBERSHIP CORPORATION, )
        Defendant. )
_____ )

**THIS MATTER** is before the Court on cross-motions for summary judgment. (Docs. 18, 21). The case is currently scheduled for jury trial during the May 2013 Trial Term in the Statesville Division. A motion to continue the trial date is also before the Court. (Doc. 45).

### I.    Background

Plaintiff Paula B. Pope ("Pope"), a Caldwell County resident, was employed by Defendant Blue Ridge Electric Membership Corporation ("Blue Ridge"), a North Carolina corporation, for twenty-four years before her termination on January 4, 2011.

Pope began work with Blue Ridge on February 10, 1986 as a Capital Credit Clerk in the Finance Department. Prior to her termination, Pope had been the Director of the Finance Department for approximately twenty years. Pope became separated from Blue Ridge's employ following multiple periods of leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA").[1] After the third period of leave, Pope was advised upon her return to

---

[1] Under tragic circumstances, Plaintiff benefitted from three periods of FMLA and disability leave in a span of approximately a year and a half (or from October 23, 2009 through December 2010). The first period of FMLA leave was following a near fatal car accident that her husband and daughter were in [October 23, 2009 - February / March 2010]. The second period of leave was taken after learning

work that her department was being "re-organized" and that the company had decided it no longer needed her position. It is undisputed that Pope's Director of Finance position was the only position eliminated from within the Finance Department. Nonetheless, this was not the first instance where Blue Ridge elected to eliminate a single position and justified its decision as a cost saving measure. Pope was fifty-six years old at the time of her termination.

There are no factual questions concerning Pope's job performance as Blue Ridge concedes that Pope was routinely promoted and generally considered a good employee. Rather, Blue Ridge represents that it exercised its good business judgment in electing to eliminate the Director position. According to Blue Ridge, during Pope's periods of leave, as various duties were delegated to other managers, Blue Ridge discovered that the Finance Department, as a whole, ran as smoothly in Pope's absence as it did when she was present. Consequently, Blue Ridge arrived at the conclusion that the Director of Finance position was an unnecessary level of management. In fact, the Director of Finance position was eliminated altogether and Pope's previous duties and responsibilities were assigned permanently to other managers within the department. (Def.'s Mem. In Supp., 4-6). Pope then claimed that her termination was either in interference with her rights under FMLA, or in retaliation for taking FMLA-protected leave.

Upon dismissal, Blue Ridge offered Pope a severance package including two years of salary. Pope immediately obtained legal counsel and rejected the severance proposal. Shortly thereafter, the parties participated in a pre-litigation mediation with Attorney and Mediator Jon Harkavy. Mediation occurred on May 10, 2011. Pope was represented by counsel throughout

---

that her husband had terminal liver cancer [May 26, 2010 – June 13, 2010]. The third period of leave was due to the short-term disability of Plaintiff, taken to manage her own stress and health as her husband's health deteriorated, and in the aftermath of his death in October 2010 [September 24, 2010 – December 24, 2010]. Plaintiff also qualified for long-term disability on December 24, 2010. This last period of leave from work may have been both under FMLA and disability. Given the Court's determination, as a matter of law, that Plaintiff's FMLA claim cannot proceed, only the key facts and dates are included for context.

mediation. After a day-long mediation session, the parties entered into a written Mediated Settlement Agreement ("Agreement") that purported to resolve the parties' "respective rights and claims, cross-claims, counterclaims, third-party claims, and / or defenses, if any."[2] (Doc. 22-23, 22-24 / Agreement, ¶ 5). The terms of the Agreement provided that Blue Ridge would pay Pope $400,000.00, award Pope a credit for any "COBRA" paid, and pay the mediator's fee. (Doc. 22-24 / Agreement, 1). Blue Ridge also agreed to treat Pope as a twenty-five year retiree for purposes of its welfare benefit plan. (Id.). In exchange, the Agreement required a "general release" from Pope. (Id.). Performance was expected within 15 business days of execution of the Agreement. (Id.).

Seven days later, Pope, through counsel, advised Blue Ridge of her intention to revoke the Agreement and pursue her remedies under the Age Discrimination Employment Act ("ADEA"). Pope did just that and brought her ADEA claim to the attention of this federal district court upon initiation of this action and following exhaustion before the Equal Employment Opportunity Commission ("EEOC").

Blue Ridge responded to Pope's attempted revocation of the Agreement by asserting that the Agreement remained enforceable and indicating that Blue Ridge was and is fully prepared to comply. Blue Ridge commenced a declaratory judgment action in state court seeking to have the Agreement enforced. The state declaratory judgment action has since been administratively closed without prejudice pending disposition in the instant federal action. (Def.'s Mem. In Supp., 6 n. 2).

---

[2] The Agreement included one page of handwritten notes with initials of the parties adjacent to certain terms and signatures at the bottom of the page. (Doc. 22-24). In addition, there was a three-page typewritten document with standard settlement provisions (i.e., the governing mediation rules, applicable law, confidentiality, integration) as well as designated signature lines for the parties and witnesses on the final page. (Doc. 22-23). Both of these documents were executed by Pope and Julie Odell-Michie, Senior Vice President and Chief Administrative Officer for Blue Ridge.

On December 27, 2011, Pope commenced this civil action seeking declaratory judgment and injunctive relief, and damages for alleged violations of the FMLA, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and the common law of North Carolina. (Doc. 1).

Jurisdiction is supplied by 29 U.S.C. § 2617(a), 29 U.S.C. § 626(c), 29 U.S.C. § 1132(e), 28 U.S.C. § 1331, and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

Blue Ridge moves for summary judgment on all causes of action alleged in Pope's Complaint based upon the Mediated Settlement Agreement entered into by the parties. Alternatively, Blue Ridge contends that the Mediated Settlement Agreement bars all claims except those asserted by Pope under the ADEA. Pope moves for summary judgment on her FMLA claim, as well as Blue Ridge's Second Defense of Release and Waiver, asserted in defense of Pope's Complaint.

## II.     Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2010). In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same).

In this case, the parties have filed cross-motions for summary judgment and / or partial summary judgment. Thus, this Court must review each motion separately on its own merits. *See Rossignol v. Voorhaar,* 316 F.3d 516 (4th Cir. 2003) (internal citation omitted); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011) (internal citations omitted). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing the motion. *Rossignol,* 316 F.3d at 523 (internal citation omitted).

### III. Discussion

As recognized by the parties, the summary judgment analysis is driven by whether the Mediated Settlement Agreement is enforceable, in part or in whole. For this reason, the Court first considers what impact, if any, the ADEA's strict waiver and release provision, 29 U.S.C. § 626(f), has on the ability of Blue Ridge to enforce the terms of the Agreement.[3]

Blue Ridge appears to concede that Section 626(f) of the ADEA statute was not adhered to because the Agreement does not provide for either a waiting or revocation period.[4] Thus, the

---

[3] The strict waiver and release criteria within the ADEA's § 626(f) are not found within the other federal statutory schemes relevant here (FMLA, ERISA).

[4] Pursuant to the ADEA, 29 U.S.C. § 626(f):

    (1)    An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum—

    (B) the waiver specifically refers to rights or claims arising under this chapter;
\*\*\*
    (F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or
\*\*\*
    (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired . . . .

Court next analyzes whether the Agreement is enforceable as to the *non-ADEA claims* brought by Pope.

### A. The Mediated Settlement Agreement Is Enforceable As To All Non-ADEA Claims

The undersigned agrees with Blue Ridge that the non-ADEA claims are, in fact, barred by the parties' Agreement. Drawing a contrast between state contract law and the ADEA's statutory requirements, the Supreme Court explains § 626(f) of the Older Workers Benefits Protection Act ("OWBPA") as follows:

> The OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law. The statute creates a series of prerequisites for knowing and voluntary waivers and imposes affirmative duties of disclosure and waiting periods. The OWBPA governs the effect under federal law of waivers or releases on ADEA claims and incorporates no exceptions or qualifications. The text of the OWBPA forecloses the employer's defense, ***notwithstanding how general contract principles would apply to non-ADEA claims***.

*Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998) (emphasis provided). In recognizing that the ADEA claim was not effectively released, the Supreme Court observed, "[a]s a statutory matter, the release cannot bar [the] ADEA suit, ***irrespective of the validity of the contract as to other claims***." *Oubre*, 522 U.S. at 428. In *Oubre*, the Supreme Court contemplated that contract law would govern any non-ADEA claims. *Id.*; s*ee also Halvorson v. Boy Scouts of Am.*, 215 F.3d 1326 (10th Cir.2000) (upholding waiver and release of ERISA, FMLA and ADA claims despite waiver and release's invalidity as to ADEA claim).

Under North Carolina law,[5] it is well established that mediated settlement agreements are contracts and, as such, are governed by general principles of contract law. *See Chappell v. Roth*, 548 S.E.2d 499, 500 (N.C.2001) (citing *McNair v. Goodwin*, 136 S.E.2d 218, 223 (N.C. 1964)).

---

[5] It was expressly stated that the Agreement's application and interpretation "shall be governed exclusively by the laws of the State of North Carolina." (Doc. 22-23 / Agreement, ¶ 7).

"For an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, . . . there is no agreement." *Chappell*, 548 S.E.2d at 500 (internal citations and quotation marks omitted); *see also Cabarrus County v. Systel Business Equip. Co.*, 614 S.E.2d 596, 587 (N.C.App. 2005).

"Courts will enforce only those settlement terms on which the parties have reached agreement." *Hensley v. Alcon Lab., Inc.*, 277 F.3d 535, 541 (4th Cir. 2002) (remanded to district court for plenary evidentiary hearing where plaintiff refused to execute agreement after terms of settlement were reduced to writing and claimed to never have indicated agreement to any terms including settlement figure)(West Virginia law). In order to enforce a settlement agreement, this Court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540-41 (citing *Moore v. Beaufort County,* 936 F.2d 159, 162 (4th Cir.1991) (South Carolina law); *Bader v. Sossomon*, 2011 WL 4559127 (4th Cir.2011) (North Carolina law) (unpublished).

In this case, the parties' Mediated Settlement Agreement, provides in pertinent part:

> "Effect of the Agreement; Counterparts. Upon the execution of this Agreement, it shall be binding and enforceable between the Parties. . . ."

(Doc. 22-23 / Agreement, ¶ 4). The Agreement was, in fact, executed on May 10, 2011, and was effective as of that date. Significantly, the parties' ability to enforce the Agreement was not to require production of any further documents or testimony.[6] (Doc. 22-24 / Agreement, 1). As recited within, all "material items" or terms, including consideration and the time for performance, were supplied. (Id.) There is nothing in the record (not even an allegation) tending to show that the Agreement was intended by the parties to be anything less than final and

---

[6] The Agreement expressly states that it:

"contain[sic] all the material items of the parties['] settlement and may be separately enforced w/o further documents or testimony."

complete. Most importantly, there is no contention that Pope, who was represented by counsel, failed to make a knowing or voluntary release of her employment discrimination claims. *See generally, Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n. 15 (1974). Finally, the Agreement expressly contemplated that the Agreement "cannot be introduced into evidence in any action filed in any court *except to enforce the terms of the Agreement itself*." (Doc. 22-23 / Agreement, ¶ 5) (emphasis provided).

Because the Agreement did not contain a severability clause, Pope contends that if the Agreement fails to comply with ADEA statutory requirements, the *entire agreement* is invalid and void. However, the cases cited by Pope are not employment discrimination cases and are readily distinguishable. (Def.'s Reply, 4-5). Moreover, "[p]ublic policy favors voluntary settlement of claims and enforcement of releases." *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372-73 (5th Cir.2002) (construing general "any and all" claims release to encompass and bar ERISA claim even though not specifically mentioned; holding that the OWBPA, while controlling as to ADEA claims, does not apply to release of ERISA claims) (internal citations omitted).

For these reasons, the Court finds that the Mediated Settlement Agreement is valid and enforceable as to the non-ADEA claims brought by Pope. Summary judgment will be granted in favor of Blue Ridge on Pope's claims alleging violation of the FMLA, ERISA, and North Carolina common law.

### B. Pope's ADEA Claim Is Not Supported By Sufficient Evidence

Because the Mediated Settlement Agreement does not meet the statutory prerequisites for release and waiver under the ADEA, Pope's ADEA claim must be evaluated in accordance with Rule 56 of the Federal Rules of Civil Procedure.

Pope contends that her age was an impermissible factor considered by Blue Ridge in deciding to eliminate the Director of Finance position. In order to successfully make out an ADEA claim, Pope must prove that "but for" Defendant's alleged discrimination Plaintiff would not have been terminated. 29 U.S.C. § 623(a)(1); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir. 1992). A plaintiff can do this in one of two ways: (1) under ordinary standards of proof with direct and indirect evidence: or (2) under the judicially created *McDonnell Douglas* burden shifting analysis. *Clay Printing Co.,* 955 F.2d at 940.

Plaintiff, who lacks any direct evidence of discrimination, attempts to prove Defendant's discriminatory intent by use of the *McDonnell Douglas* framework. Under *McDonnell Douglas*, when a plaintiff cannot establish his case under ordinary standards of proof, a plaintiff may prove his case under a judicially created scheme. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to satisfy the *McDonnell Douglas* framework, a plaintiff must establish a *prima facie* case. *See Dugan v. Albermarle County Sch. Bd.*, 293 F.3d 716, 720 (4th Cir. 2002). The *prima facie* case consists of four elements: (1) plaintiff belongs to a protected class, (2) was discharged, (3) at the time of discharge, plaintiff met her employer's legitimate expectations, and (4) following discharge, plaintiff was replaced by a substantially younger person. *Id.* at 720-721, n.1. If the plaintiff is successful in establishing a *prima facie* case, the "burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *McDonnell Douglas*, 411 U.S. at 802. "The employer is not required to prove absence of a discriminatory motive, but merely articulate some legitimate reason for its action." *EEOC v. Western Elec. Co.*, 713 F.2d 1011, 1014 (4th Cir. 1983).

Plaintiff is not able to establish a *prima facie* case. It is undisputed that Plaintiff, who was 56 years old at the time of discharge, belongs to a protected class within the meaning of the

ADEA. Additionally, at the time of Pope's discharge, she was meeting Defendant's legitimate expectations in her job performance. (*See* Doc. 34 / Pl.'s Mem. In Opp'n., 15). However, viewing the facts in the light most favorable to Plaintiff, Pope is not able to prove the last element of her *prima facie* case. Plaintiff alleges that she had "12 employees reporting either to her or her subordinate manager." (*Id.* at 16). Plaintiff alleges that these employees are substantially younger than her yet does not articulate how she was replaced by a substantially younger individual. While Plaintiff was on leave, Defendant made the decision to distribute Plaintiff's duties to various employees of various ages.[7] Defendant has not hired anyone to Plaintiff's former position, nor has there been an internal promotion. (Doc. 30 / Def.'s Reply, 6). Plaintiff has not shown that she was replaced by someone substantially younger than her. Most of Plaintiff's subordinates that took over her work while she was on FMLA leave were of comparable age or older. Although there were two employees younger than Plaintiff, neither of these employees was promoted to Plaintiff's former position. There is simply no evidence that Pope's age was a factor in the decision to eliminate the Director of Finance position. For these reasons, Pope's ADEA claim does not survive summary judgment.

## IV. Order

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment is hereby **GRANTED**.

---

[7] Employees that took over some of Plaintiff's duties while she was on leave: Lee Chase, 68, Dee Strickland, 57, Lynn Heatherly, 52, Amy Crowder, 37, Glenn Grubb, 58, and Julie O'Dell-Michie, 48. (Doc. 30/ Reply, 6).

**IT IS FURTHER ORDERED** that Defendant's Motion to Continue is **DENIED** as **MOOT**.

Signed: April 22, 2013

Richard L. Voorhees
United States District Judge